UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

────────────────────────────

CATHERINE SCHRAUTH FORCUCCI and
HOLLY A. BALAYA,

                              Plaintiff,

        -vs-

BOARD OF EDUCATION OF HAMBURG
CENTRAL SCHOOL DISTRICT,

                              Defendant.

────────────────────────────

**No. 1:14-CV-00830 (MAT)**
**DECISION AND ORDER**

## I.    Introduction

Catherine Schrauth Forcucci ("Schrauth Forcucci") and Holly A. Balaya ("Balaya") (collectively, "plaintiffs") bring this action pursuant to 42 U.S.C. § 1983, alleging due process and First Amendment retaliation claims against defendant Board of Education of Hamburg Central School District ("the Board" or "defendant"). Presently before the Court are defendant's Rule 12(b)(6) motion to dismiss all claims and Rule 56 motion for partial summary judgment as to counts one and three of the complaint, and plaintiffs' motion for partial summary judgment as to counts one and three of the complaint. For the reasons discussed below, defendant's motion to dismiss is granted to the extent that counts two, four, and five are dismissed for failure to state a claim upon which relief can be granted, and defendant's motion for summary judgment as to counts one and three is granted. Accordingly, the complaint is dismissed in its entirety.

## II.  Factual Background

The following facts are taken from the parties' submissions in connection with their cross-motions for summary judgment. On May 21, 2013, Schrauth Forcucci was elected to the Board. She commenced her three-year term on July 1, 2013. On that date, the Board consisted of seven members, including plaintiffs, president David Yoviene, vice president Sally Stephenson, Patricia Brunner-Collins, Thomas F. Flynn III, and Laura Heeter. The next year, Flynn was reelected and Cameron Hall was elected to a seat vacated by Balaya, who did not seek reelection. Hall began his term on July 1, 2014.

After Schrauth Forcucci's term commenced in July 2013, and throughout the following year, conflicts developed within the Board, and ultimately certain Board members sought Schrauth Forcucci's removal for various instances of alleged unprofessional conduct. On April 30, 2014, the Board charged Schrauth Forcucci with official misconduct.[1] She was served with a "Statement of Charges" ("the Charges") on May 2, 2014. The Charges alleged that Schrauth Forcucci's "actions" while on the Board "[had] been confrontational and interfered with the Board's ability to

---

[1] New York Education Law § 1709(18) provides that a board of education has the "power" and "duty":

> To remove any member of their board for official misconduct. But a written copy of all charges made of such conduct shall be served upon [the Board member] at least ten days before the time appointed for a hearing of the same; and he shall be allowed a full and fair opportunity to refute such charges before removal.

2

function," and that despite advisement by the Board that her "confrontational behavior was unacceptable," Schrauth Forcucci "continued her confrontational actions." Doc. 23-3 at 2. More specifically, the Charges alleged that Schrauth Forcucci "[b]erated and verbally attacked" Board president David Yoviene ("Yoviene"), Interim Superintendent Richard Jetter, and others; refused to comply with Yoviene's instructions; took photographs of confidential personnel files and destroyed a document necessary to facilitate review of a particular personnel file; and took other actions described as generally "disrespectful and unprofessional." Id. at 2-6.[2]

A hearing officer, David Hoover, was appointed and a hearing on the Charges commenced May 27, 2014. The hearing was continued May 28, June 4, June 25, June 30, July 2, August 4, August 7, and August 9, 2014. The first three of those hearing dates were conducted in executive session, and not held open to the public. In the meantime, on June 5, 2014, Schrauth Forcucci moved by order to show cause filed with the New York State Supreme Court, Erie County, for a preliminary injunction enjoining the Board from

---

[2] On May 13, 2014, pursuant to New York Education Law § 310, Schrauth Forcucci filed a notice of petition and verified petition with the New York State Commissioner of Education ("the Commissioner") seeking a determination that (1) the Board lacked sufficient votes to approve a motion seeking her removal as a Board member; and (2) the Statement of Charges was facially insufficient to establish official misconduct. Schrauth Forcucci also petitioned the Commissioner for a stay of any "further action regarding [her] removal by [the Board]." Doc. 23-4 at 19. The Commissioner denied petitioner's request for a stay, and as of the time of defendant's motion for partial summary judgment, her further requests remained pending.

conducting the removal hearing in executive session. Schrauth Forcucci argued that under New York's Open Meetings Law, the public was entitled to attend the hearings. On June 5, 2014, Erie County Supreme Court Justice Diane Y. Devlin issued a temporary restraining order and ordered that the continuation of the hearing originally scheduled for that date be stayed unless it was held open to the public. After receiving the ruling, the Board canceled hearings originally scheduled for June 5 and 6, 2014.

On June 11, 2013, Justice Devlin granted the preliminary injunction, again ordering that any continuation of the hearing be held in a meeting open to the public. On that date, the Board canceled hearings originally scheduled for June 11 and 13, 2014, and as noted above, the hearings ultimately continued beginning June 25, 2014. That hearing and all remaining dates were held open to the public pursuant to New York's Open Meetings Law and Justice Devlin's order. On September 2, 2014, after the hearings had concluded, hearing officer Hoover recommended to the Board that Schrauth Forcucci be removed from her position as Board member. On September 3, 2014, the Board removed Schrauth Forcucci as Board member.

## III. Procedural History

This action was commenced in New York State Supreme Court, Erie County, on October 2, 2014. The Board removed the action to this Court, on the basis of federal question jurisdiction, on

October 7, 2014. The complaint alleges five counts: (1) deprivation of procedural due process as to Schrauth-Forcucci; (2) First Amendment retaliation against Schrauth-Forcucci; (3) disenfranchisement as to both plaintiffs; (4) right to attorney's fees under 42 U.S.C. § 1988; and (5) right to attorney's fees under New York Public Officers Law § 18 and Education Law § 3811. On October 24, 2014, the Board filed its initial 12(b)(6) motion to dismiss the complaint in its entirety.

By order dated October 23, 2014, this Court (Arcara, J.)[3] denied plaintiffs' motion (doc. 3) for a temporary restraining order to enjoin the Board from filling the Board seat left vacated by Schrauth Forcucci when the Board removed her. The Court also ordered the Board to supplement its motion to dismiss with submissions sufficient for the Court to consider the question of whether Schrauth Forcucci had a property interest in or statutory entitlement to the elected Board seat sufficient to trigger Fourteenth Amendment procedural due process protection. On October 28, 2014, the Court further ordered the Board to supplement its motion as to count three of the complaint so that the Court could evaluate the two causes of action simultaneously. See doc. 21.

---

[3] This case was transferred to the undersigned, by the Honorable Richard J. Arcara, by Order dated May 6, 2016.

On November 7, 2014, the Board filed its motion for partial summary judgment as to counts one and three of the complaint. Doc. 23. On November 14, 2014, plaintiffs filed their opposition to that motion, along with a cross-motion for summary judgment on those two claims. Doc. 25. Plaintiffs' filing did not respond substantively to the Board's original motion to dismiss counts two, four, and five of the complaint.

## IV.  Discussion

### A.  The Board's Motion to Dismiss

Because the Board has since moved for summary judgment as to plaintiffs' claims under counts one and three of the complaint, the Court will address the Board's motion to dismiss only as it pertains to counts two, four, and five of the complaint. The function of a motion to dismiss pursuant to Rule 12(b)(6) is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984) (internal quotation marks omitted). In order "[t]o survive a motion to dismiss under [Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In assessing a claim's plausibility, the district court must "assume

[the] veracity" of all well-pleaded factual allegations contained in the complaint, Iqbal, 556 U.S. 679, and draw every reasonable inference in favor of the plaintiff, Zinermon v. Burch, 494 U.S. 113, 118 (1990). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

Initially, the Court notes that plaintiffs have not responded to the Board's motion to dismiss, focusing instead on their cross-motion for summary judgment as to the first and third causes of action. "If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." McCall v. Pataki, 232 F.3d 321, 322 (2d Cir. 2000). Plaintiffs' failure to respond to the motion notwithstanding, then, the court must determine whether, "accept[ing] the allegations contained in the complaint as true, and draw[ing] all reasonable inferences in favor of the non-movant," plaintiffs have stated a facially valid claim. Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994). For the reasons discussed below, the Board's motion to dismiss is granted as to counts two, four, and five of the complaint.

### 1.   Count Two: First Amendment Retaliation

"When a public employee brings retaliation claims based on the First Amendment, as is the case here, the plaintiff must prove

that: '(1) [she] engaged in constitutionally protected speech because [she] spoke as [a] citizen[] on a matter of public concern; (2) [she] suffered an adverse employment action; and (3) the speech was a motivating factor in the adverse employment decision.'" <u>Hadid v. City of New York</u>, 2015 WL 7734098, *9 (E.D.N.Y. Nov. 30, 2015), reconsideration denied, 2016 WL 1622888 (E.D.N.Y. Apr. 22, 2016). The Board contends that the complaint fails to allege the requisite facts to establish the second or third element.

The complaint alleges that Schrauth Forcucci engaged in protected activity under the First Amendment when she "[brought] action to have [her disciplinary] hearings open to the public and the media." Doc. 1-2 at ¶ 131. It goes on to allege that after she took such action and obtained an injunction from the New York State Supreme Court, the Board retaliated against her by "cancelling hearing dates, refusing to schedule hearing dates, publicly denouncing her for 'derailing' these hearings, and blaming her for the legal costs associate with these hearings." <u>Id.</u> at ¶ 133. According to the complaint, the Board's actions in delaying the hearings "[were] intended to silence and punish a minority board member [Schrauth Forcucci] for exercising her First Amendment privileges." <u>Id.</u> at ¶ 136.

As to the second element, "[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an

adverse action for a claim of retaliation." <u>Davis v. Goord</u>, 320 F.3d 346, 353 (2d Cir. 2003) (citing <u>Dawes v. Walker</u>, 239 F.3d 489, 493 (2d Cir. 2001)). The complaint alleges that after the June 5 and 6, 2014 hearing dates were cancelled (the first alleged "adverse" action), Schrauth Forcucci continued her action in state court, in an eventually successful effort to obtain a preliminary injunction in that court. Thus, according to her own allegations, Schrauth Forcucci was not actually "deter[red] . . . from exercising . . . her constitutional rights." See <u>Davis</u>, 320 F.3d at 353. Consequently, Schrauth Forcucci fails to plausibly allege that cancellation of the hearing dates was an adverse action for purposes of her First Amendment retaliation claim.[4] See <u>Gill v. Pidlypchak</u>, 389 F.3d 379, 381 (2d Cir. 2004) (noting that, "at least in that limited public official context," "a plaintiff must prove that (1) she has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions *effectively chilled the exercise of her First Amendment right*.")

---

[4] Plaintiffs's allegations that the Board "denounc[ed]" Schrauth Forcucci, or "blame[d]" her for circumstances associated with the hearings, also do not rise to the level of adverse action. These statements "amount to no more than '[i]nsulting or disrespectful comments,' a 'hostile manner,' or 'sarcastic comments,' which, [the Second Circuit has] held, 'without more' are 'simply de minimis' acts that fall 'outside the ambit of constitutional protection[.]'" <u>Toliver v. City of New York</u>, 530 F. App'x 90, 92 (2d Cir. 2013); see also <u>Carl v. Griffin</u>, 2011 WL 723553, *5 (S.D.N.Y. Mar. 2, 2011) ("[V]erbal harassment, or even threats, are generally held not to rise to the level of adverse action that will support a First Amendment retaliation claim." (internal quotation marks and citations omitted)); <u>Bartley v. Collins</u>, 2006 WL 1289256, *6 (S.D.N.Y. May 10, 2006) ("[V]erbal threats such as 'we going to get you, you better drop the suit,' do not rise to the level of adverse action.").

(emphasis added); see also <u>Dickson v. McGrady</u>, 2010 WL 1330082, *6 (M.D. Pa. Mar. 30, 2010) ("Plaintiff thus demonstrates that he was not deterred from exercising his First Amendment rights, but rather continued to do so."). For these reasons, the complaint fails to allege adverse action sufficient to meet the second element of a First Amendment retaliation claim.

Even assuming the complaint meets the first two elements, it fails to meet the third, which requires causation. The complaint does not plausibly allege a causal connection between Schrauth Forcucci's alleged protected speech and the adverse actions alleged. The complaint itself reveals that the hearings scheduled for June 5 and 6, 2014, were cancelled on June 5, 2014, the day that Justice Devlin issued a temporary restraining order prohibiting the Board from continuing the removal hearings unless they were open to the public. See doc. 1-2 at ¶ 95 ("After Justice Devlin issued the TRO, the Board cancelled the June 5 and 6 hearing dates."). The June 11 and 13, 2014 meetings were cancelled on June 11, 2014, immediately following Justice Devlin's issuance of a preliminary injunction prohibiting the Board from continuing the hearings unless they were open. See <u>id.</u> at ¶ 97 ("After Justice Devlin issued a preliminary injunction on June 11, 2014, the Board cancelled the June 11 and June 13 hearing dates.").

It thus appears that Justice Devlin's orders, not Schrauth Forcucci's alleged protected speech, were the impetus for

cancellation of the four June hearing dates.[5] Another plausible cause is pointed out by plaintiffs in their complaint: they allege that the Board delayed the hearings "so that Hall could replace Balaya as one of [the Board's] decision makers." Doc. 1-2 at ¶ 134. As discussed above, Hall was elected to the seat vacated by Balaya when she did not seek reelection. Hall took his place on the Board on July 1, 2014, and eventually voted in favor of Schrauth Forcucci's removal.

Plaintiffs' conclusory allegation that the Board's actions in delaying the hearings "[were] intended to silence and punish a minority board member [Schrauth Forcucci] for exercising her First Amendment privileges," doc. 1-2 at ¶ 136, is unsupported by facts tending to plausibly allege such a causal connection. See Twombly, 550 U.S. at 555 (2007) ("[A] plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level."). Therefore, even if the complaint adequately pled the

---

[5] The Board's motion includes transcripts of proceedings before Justice Devlin and her order issuing the preliminary injunction. See doc. 20-2, 20-3. Although decision on a motion to dismiss is generally limited to a review of the pleadings, the Court is free to take judicial notice of matters of record in prior litigation between the same parties. See Shuttlesworth v. City of Birmingham, 394 U.S. 147, 157 (1969) (taking judicial notice of the record in prior litigation between the same parties); Staehr v. Hartford Fin. Servs. Group, Inc., 547 F.3d 406, 426 (2d Cir. 2008) ("[M]atters judicially noticed by the District Court are not considered matters outside the pleadings."). Justice Devlin specifically stated, in granting the preliminary injunction, that there was "absolutely no showing that the school district [would] suffer any irreparable damage in either conducting the meetings in public *or postponing the hearings until this litigation has been completed.*" Doc. 20-3 at 5 (emphasis added).

first two elements, it fails to plead the third. Accordingly, because it is not plausibly alleged, Schrauth Forcucci's claim of First Amendment retaliation is dismissed.

### 2.   Counts Four and Five: Attorney's Fees

Plaintiffs' fourth and fifth causes of action are requests for attorney's fees pursuant to 42 U.S.C. § 1988, New York Public Officers Law § 18, and New York Education Law § 3811. These requests for relief are not substantive claims, and are therefore dismissed. See, e.g., Jaffe v. Capital One Bank, 2010 WL 691639, *10 (S.D.N.Y. Mar. 1, 2010) (dismissing claims for attorney's fees because they were "not causes of action" but rather a "potential forms of relief").

### B.   The Board's Motion for Summary Judgment

Summary judgment is appropriate where the court determines "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(c). The court must view all facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts." See Scott v. Harris, 550 U.S. 372, 380 (2007). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmoving party, however, may not rely on "[c]onclusory allegations, conjecture, and speculation," Kerzer v.

Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998), but must affirmatively "set out specific facts showing a genuine issue for trial." See Fed. R. Civ. P. 56(e). To meet this burden, "a plaintiff must come forward with evidence to allow a reasonable jury to find in his favor" on each of the elements of his prima facie case. See Lizardo v. Denny's, Inc., 270 F.3d 94, 101 (2d Cir. 2001).

As noted above, this Court (Arcara, J.) previously ordered the parties to come forward with evidence regarding the issue of whether Schrauth Forcucci had a constitutionally-recognized property interest or statutory entitlement to her position as an elected School Board member. Subsequently, both parties submitted motions for partial summary judgment on Schrauth Forcucci's due process claim, which is set forth at count one of the complaint, and plaintiffs' related disenfranchisement claim, which is set forth at count three.

### 1.   Count One: Denial of Procedural Due Process

Schrauth Forcucci contends that she was denied procedural due process, guaranteed to her by the Fifth and Fourteenth Amendments, when the Board removed her from her position as Board member. Schrauth Forcucci argues that a number of procedural defects occurred throughout the hearing process which ultimately deprived her of her constitutional rights. To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) "that some person has

deprived him of a federal right," and (2) "that the person who has deprived him of that right acted under color of state . . . law." Gomez v. Toledo, 446 U.S. 635, 640 (1980).

### a.    Property Interest

Plaintiff first argues that the Board violated her due process rights by depriving her of a property interest in her elected position on the Board. In Velez v. Levy, 401 F.3d 75, 85 (2d Cir. 2005), the Second Circuit addressed a factually similar due process claim in the school board context. The Court noted that "[i]n order to establish a due process violation of this sort, plaintiff must show that state action deprived her of a property interest protected by the Fourteenth Amendment." Velez v. Levy, 401 F.3d 75, 85 (2d Cir. 2005). "[O]nly where a plaintiff can demonstrate that state law confers "a legitimate claim of entitlement" to a particular position will a property interest in that position arise." Id. In Velez, the Second Circuit determined that the plaintiff "lack[ed] a constitutionally cognizable property interest in her elected [school board] office." Id. at 86 (citing Taylor and Marshall v. Beckham, 178 U.S. 548 (1900); Snowden v. Hughes, 321 U.S. 1 (1944)).

The same reasoning applies here, and the Court therefore finds that Schrauth Forcucci had no constitutionally-protected property interest in her elected position on the Board. See also, e.g., LaPointe v. Winchester Bd. of Ed., 366 F. App'x 256, 257 (2d Cir.

14

2010) ("[E]lected officials lack such a protected property interest in their elected offices because 'public offices are mere agencies or trusts, . . . not property.'") (quoting <u>Velez</u>, 401 F.3d at 86; <u>Taylor</u>, 178 U.S. at 577) (citing <u>Snowden</u>, 321 U.S. at 7 (reaffirming the holding of Taylor)).

Plaintiffs' attempts to distinguish <u>Velez</u> are not persuasive. Plaintiffs contend that the <u>Velez</u> Court "concluded that Velez lacked [a property interest]" because it "found the 'statutory framework' for removing a . . . school board member allowed the Chancellor 'unilateral' authority to remove the plaintiff without a hearing and without an opportunity to refute the charges." Doc. 25-34 at 14. This argument misstates the holding of <u>Velez</u>. In <u>Velez</u>, like in this case, the plaintiff argued that she had a property interest in her position on the school board as a result of statutory framework providing for removal, for cause, of a school board member in New York City. Although the <u>Velez</u> Court found that under such a statutory framework, "[i]t might *seem . . . that Velez's allegations would be adequate to support a property interest claim,*" the Court nevertheless explicitly rejected the argument based on the fact that the position to which Velez claimed entitlement was her *elected position*. <u>Velez</u>, 401 F.3d at 86 (emphasis added). As the Court explained, under relevant Supreme Court precedent, "elected offices cannot constitute 'property' within the meaning of the Fourteenth Amendment." <u>Id.</u> (quoting

Snowden, 321 U.S. at 7). Thus, plaintiffs' argument, which is nearly identical to the argument advanced by the plaintiff in Velez, fails.

### b.   Liberty Interest

Schrauth Forcucci's brief in support of her motion for partial summary judgment argues that while she may not have had a property interest, she suffered the loss of a liberty interest without sufficient process. "To state a valid claim for such an injury, [Schrauth Forcucci's] complaint must assert (1) that she possessed a cognizable liberty interest, and (2) that the defendants deprived her of that same liberty without providing process adequate to justify their actions." Velez, 401 F.3d at 87. In Velez, the Second Circuit noted that such a "stigma-plus" claim "requires a plaintiff to allege (1) the utterance of a statement about her that is injurious to her reputation, 'that is capable of being proved false, and that he or she claims is false,' and (2) 'some tangible and material state-imposed burden . . . in addition to the stigmatizing statement.'" Id. (quoting Doe v. Dep't of Pub. Safety ex rel. Lee, 271 F.3d 38, 47 (2d Cir. 2001), rev'd on other grounds, Connecticut Dep't of Pub. Safety v. Doe, 538 U.S. 1 (2003)). The Second Circuit has cautioned that, as defamation is generally a matter of state tort law, a "stigma-plus" claim provides a remedy only in "*limited circumstances* . . . for

16

government defamation under federal constitutional law." <u>Sadallah</u> <u>v. City of Utica</u>, 383 F.3d 34, 38 (2d Cir. 2004) (emphasis added).

The Board contends that Schrauth Forcucci's complaint fails to make out a stigma-plus claim, and merely alleges denial of her alleged property interest. The Board argues that Schrauth Forcucci should not now be allowed to add this new claim, where it was not pled in her complaint. Schrauth Forcucci argues that her complaint does make out a stigma-plus claim by alleging that various injurious statements made by Board president Yoviene, community member Daniel Chiacchia, and former Superintendent Jetter,[6] as well as the filing of formal charges alleging official misconduct, amounted to enough to allege the first, "stigma," prong of a stigma-plus claim. See doc. 33 at 5. She contends that the "plus" prong is established by allegations that she was, in fact, removed from the Board.

The public statements made within the Board's official Charges, which allege various instances of specific unprofessional conduct by Schrauth Forcucci, arguably qualify as defamatory under relevant precedent.[7] See, e.g., <u>Huntley v. Community Sch. Bd.</u>, 543

---

[6] As Chiacchia and Jetter are neither members of the Board nor named defendants in this action, the Court has reviewed the alleged "injurious" statements made by members of the defendant Board which could rise to the level required for a stigma-plus claim.

[7] Statements similar to the allegations contained in the Charges were made at a public meeting held October 2, 2013, at which Yoviene stated, among other things, that Schrauth Forcucci was disrespectful and abusive to staff and improperly destroyed a document belonging in an employee's personnel file. Doc. 25-24 at 2. The Court notes, however, that plaintiffs do not cite the official Charges as the relevant defamatory statements. See doc. 25-34 at 13 (citing,

F.2d 979, 985 (2d Cir. 1976), cert. denied, 430 U.S. 929 (1977)
(describing statement of charges against school principal, and
finding that allegations contained therein implicated a liberty
interest because they "[went] to the very heart of Huntley's
professional competence" and "drastically impaired" his chance of
receiving another supervisory position). Allegations of this type,
however, have been held sufficiently injurious "only when they
denigrate the employee's competence as a professional and impugn
the employee's professional reputation in such a fashion as to
effectively put a significant roadblock in that employee's
continued ability to practice his or her profession."[8] Donato v.
Plainview-Old Bethpage Cent. Sch. Dist., 96 F.3d 623, 630-31
(2d Cir. 1996). The Court need not decide the question of whether

---

instead, doc. 25-33 at ¶¶ 14 [referencing doc. 25-24], 17, 18, 26-29, 38
[highlighting Yoviene's public and private statements regarding Schrauth
Forcucci]).

   [8] On the other hand, public statements as to matters of opinion (such as
Yoviene's statements that plaintiff was "responsible for much of the dysfunction
of the board," doc. 1-2 at ¶ 44, had "'been a headache for [the Board]," id. at
¶ 45, and was not capable of changing her behavior, id. at ¶ 110) are statements
of opinion not falling within the ambit of a stigma-plus claim. See, e.g., Sharpe
v. City of New York, 2013 WL 2356063, *6 (E.D.N.Y. May 29, 2013), aff'd, 560 F.
App'x 78 (2d Cir. 2014) (finding statements to the effect that plaintiff had
"profoundly flawed judgment" "consisted of [defendant's] personal assessment of
plaintiff's actions rather than a factual representation[, and] [a]ccordingly,
it [could] not form the basis of a 'stigma-plus' claim") (emphasis added); Prince
v. County of Nassau, 837 F. Supp. 2d 71, 98 (E.D.N.Y. 2011), aff'd, 563 F. App'x
13 (2d Cir. 2014) (dismissing stigma-plus claim, finding that "plaintiff has not
pointed to any record evidence of statements made by the defendants that were
'capable of being proved true or false,'" and this is fatal to any stigma plus
claim"). Likewise, statements made in private (such as such as plaintiffs'
allegation that Yoviene privately told Balaya that Schrauth Forcucci's "camp" may
have been responsible for damage done to Jetter's vehicle, see doc. 1-2 at ¶¶ 60-
61) do not qualify. See Velez, 401 F.3d at 87 ("The defamatory statement must be
sufficiently public to create or threaten a stigma; hence, a statement made only
to the plaintiff, and only in private, ordinarily does not implicate a liberty
interest.").

the allegations in the Charges so denigrated Schrauth Forcucci's professional reputation, and rather assumes, for purposes of this analysis, that the complaint alleges sufficient defamatory statements capable of being proved false.

Even assuming that the statements made against Schrauth Forcucci were sufficient, "central to a successful stigma-plus claim is proof that the alleged disparaging statement *is false*." Smith v. New York City Dep't of Educ., 808 F. Supp. 2d 569, 582-83 (S.D.N.Y. 2011) (emphasis added). Thus, in Smith, the court reasoned:

> Here, the statements that appear to be at issue concern Smith's threats against Hearing Officer Tillem and Smith's lack of professionalism. Those very statements were *found to be true* in the First and Second Hearings and those findings were upheld in Article 75 proceedings. Accordingly, we find that Smith cannot successfully maintain a stigma-plus claim in this action.

Id. (emphasis added) (citing Vega v. Lantz, 596 F.3d 77, 82 (2d Cir. 2010) (holding that plaintiff had "not established a threshold requirement – the existence of a reputation-tarnishing statement that is *false*") (emphasis in original); Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 446 (2d Cir. 1980) ("[T]o constitute deprivation of a liberty interest, the stigmatizing information must be both false . . . and made public . . . by the offending governmental entity.")).

Here, as in Smith, the Board specifically upheld the hearing officer's findings, which found nearly every allegation contained

within the Charges to be *true*. More importantly, however, the complaint does not even allege that the statements were, in fact, false. Thus, the Court is persuaded by the Board's argument that the stigma-plus claim was not in fact pled by the complaint in the first place. See, e.g., <u>Lyman v. CSX Transp., Inc.</u>, 364 F. App'x 699, 701 (2d Cir. 2010) (affirming district court's dismissal of claim where it was raised for the first time in opposition to summary judgment). A close examination of the complaint reveals that plaintiffs do not contest the *veracity* of the statements, but rather allege that *even if the statements were true*, they would be insufficient to amount to "official misconduct" for purposes of the Board's removal hearing. See doc. 1-2 at ¶ 49 (alleging that Balaya told fellow Board members that "the conduct alleged against Schrauth Forcucci *would not constitute official misconduct*") (emphasis added); ¶ 63 (alleging that "Schrauth Forcucci filed and served an appeal with the Commissioner *to challenge the sufficiency* of the Charges") (emphasis added); ¶ 89 (alleging "Balaya again cautioned Board members that the conduct alleged against Schrauth Forcucci *did not arise to official misconduct*") (emphasis added).

Accordingly, Schrauth Forcucci's first count alleging procedural due process focuses solely on the following four areas of alleged deprivation: (1) the Board was not "given the correct standard of review . . . to evaluate Schrauth Forcucci's conduct," doc. 1-2 at ¶ 123; (2) "Schrauth Forcucci was given no prior notice

20

as to what conduct would cause her to be removed for official misconduct," <u>id.</u> at ¶ 124; (3) "a final determination was not rendered by a fair, impartial and neutral panel of decision makers," <u>id.</u> at ¶ 125; and (4) "the hearing officer had no statutory or regulatory authority to make recommendations to the Board on its final determination," <u>id.</u> at ¶ 126. Schrauth Forcucci alleges that "[e]ach of these four reasons individually would deprive Schrauth Forcucci of due process and collectively provides the Court with overwhelming evidence of a constitutionally defective determination." <u>Id.</u> at 127. The complaint thus does not allege that Schrauth Forcucci was deprived of due process due to stigmatizing statements plus removal from the Board. Reading the complaint in the light most favorable to plaintiffs, it does not make out a *prima facie* stigma-plus claim for deprivation of a liberty interest.[9] Because Schrauth Forcucci has failed to allege or prove deprivation of a property or liberty interest, the due process claim set forth at count one of the complaint is dismissed.

### 2.   Count Three: Disenfranchisement

Plaintiffs' third cause of action (and the only substantive cause of action pled on behalf of both plaintiffs) is based on

---

[9] Plaintiffs' subsequent submissions do not alter the analysis. Although Schrauth Forcucci states in a declaration that she "den[ies] being responsible for the Board's dysfunction or causing any 'damage' to the District," doc. 25-1 at ¶ 13, she does not specifically deny the allegations in the Charges, or demonstrate how they were false. Her attorney's affirmation makes clear that the challenge to her removal hearing focused not on the *falsity* of the charges, but rather on the application of the proper standard for determining whether such conduct, if true, would constitute "official misconduct." See doc. 25-4 at ¶ 21, 26, 27.

Article I, § 1 of the New York State Constitution. N.Y. Const. art. I, § 1 ("No member of this state shall be disfranchised, or deprived of any of the rights or privileges secured to any citizen thereof . . ."). The cause of action, as pled, relies on the underlying conclusion that Schrauth Forcucci's removal was rendered void by a denial of procedural due process. The complaint alleges that because her removal was void, the Board's filling of a vacancy caused by her removal "disenfranchise[d] those voters who elected Schrauth Forcucci to the Board." Doc. 1-2 at ¶ 146.

Plaintiffs have failed to establish that Schrauth Forcucci's removal from the Board was in fact void by some denial of due process, and they have consequently failed to establish the underlying factual allegations of their disenfranchisement claim. See generally Kirch v. Liberty Media Corp., 449 F.3d 388, 401 (2d Cir. 2006) (failure to state cause of action for torts underlying conspiracy allegations led to dismissal of claim for civil conspiracy); Stein v. Doukas, 98 A.D.3d 1024, 1026 (2d Dep't 2012) ("Even if the second and fourth causes of action are deemed to be referable to the causes of action alleging fraud, given the inadequacy of the underlying causes of action alleging fraud, the causes of action seeking punitive damages must be dismissed").

Plaintiffs' brief supporting their motion for partial summary judgment argues that the disenfranchisement claim actually derives from the procedural due process claim, and contends that the

"entitlement" of which plaintiffs were deprived, for due process purposes, was their right to vote under the state constitution. A cause of action under § 1983, however, cannot be grounded in a state constitutional claim. See <u>Reed v. Medford Fire Dep't, Inc.</u>, 806 F. Supp. 2d 594, 607 (E.D.N.Y. 2011) ("[A] plaintiff cannot maintain a cause of action under Section 1983 when the alleged deprivation of due process is based on the violation of state law.") (citing <u>Pollnow v. Glennon</u>, 757 F.2d 496, 501 (2d Cir. 1985) ("[A] violation of state law is not cognizable under § 1983.")). Accordingly, the third cause of action alleging disenfranchisement is dismissed.

## V. Conclusion

For the foregoing reasons, defendant's motion to dismiss (doc. 20) is granted to the extent that counts two, four, and five are dismissed for failure to state a claim upon which relief can be granted. Defendant's motion for partial summary judgment as to counts one and three (doc. 23) is granted. Plaintiffs' cross-motion for partial summary judgment (doc. 25) is denied. The complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/Michael A. Telesca**
_____
HON. MICHAEL A. TELESCA
United States District Judge

Dated:       August 5, 2016
             Rochester, New York.

23